397 So.2d 475 (1981)
Sidney BAZLEY
v.
Sordo TORTORICH, Aetna Life and Casualty Co., and Fireman's Fund Insurance Companies.
No. 67318.
Supreme Court of Louisiana.
February 26, 1981.
*478 Melvin W. Mathes, Beard, Blue, Schmitt, Mathes, Koch & Williams, New Orleans, for defendant-applicant.
Steven M. Koenig, Heisler, Wysocki & deLaup, John J. McCann, McCann and Volk, New Orleans, for plaintiffs-respondents.
Mark C. Suprenant, Thomas J. Wyllie, Adams & Reese, New Orleans, Charles Hanemann, Henderson, Hanemann & Morris, Houma, John C. Combe, Jr., John G. Gomila, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, Randall G. Wells, Avant, Wall, Thomas, Riche & Falcon, Baton Rouge, Marvin C. Grodsky, Melvin W. Mathes, Beard, Blue, Schmitt, Mathes, Koch & Williams, New Orleans, Felix R. Weill, Robert L. Roland, Watson, Blanche, Wilson & Posner, Baton Rouge, Wayne Shullaw, Harmon F. Roy, Mouton, Roy, Carmouche, Bivins & Kraft, Lafayette, amicus curiae.
DENNIS, Justice.
This case presents the question of whether the worker's compensation statute, La.R.S. 23:1032 as amended by Act 147 of 1976, constitutionally makes compensation an employee's exclusive remedy for a work-related injury caused by a co-worker, except for a suit based on an intentional tort. The trial court sustained an exception of no cause of action to plaintiff's suit against his fellow employee because he alleged that the co-worker was guilty of negligence and not an intentional tort. The court of appeal reversed, holding that, to afford due process and equal protection of the laws, the worker's compensation statute, as amended, must be interpreted to permit an employee the same remedy in tort against co-employees for negligently caused work-related injuries as he would have if injured by any other tortfeasor. We reverse the judgment of the court of appeal. The worker's compensation statute was amended by Act 147 of 1976 to preclude suits by an employee to recover for work-related injuries from certain designated persons, including a fellow employee engaged at the time of injury in the normal course and scope of employment, unless his injury resulted from the co-worker's intentional tortious act. The 1976 amendment does not deprive the plaintiff of due process of law, equal protection of law or access to the judicial process. It was duly adopted in accordance with the Louisiana constitution.
Plaintiff, Sidney Bazley, a Jefferson Parish garbage worker filed suit against an unidentified co-employee truck driver, the co-employee's insurer, Sardo Tortorich and Tortorich's insurer as result of work-related injuries Bazley received when he was struck by Tortorich's car while he was mounting the back of a parish garbage truck. In his petition, as supplemented and amended, Bazley alleged that the accident was caused by his co-employee's intentional acts in operating a garbage truck without a working horn, disregarding mechanical and electrical maintenance standards, failing to keep a lookout, failing to see what he should have seen, failing to stop in a safe place and failing to warn plaintiff of danger. Bazley did not allege, however, that the co-employee desired the consequences of his acts or believed that they were substantially certain to follow his acts.
The trial court sustained an exception of no cause of action to Bazley's suit against the garbage truck driver on the ground that it constituted a negligence action against a co-employee based on a work-related injury in contravention of the exclusive remedy rule of the Compensation Act. The court of appeal reversed holding that compensation is an employee's exclusive remedy against his employer but the statute constitutionally cannot be interpreted to bar his suit in tort against other persons. 380 So.2d 727 (La.App. 4th Cir. 1980). We granted certiorari. 383 So.2d 1263 (1980).
La.R.S. 23:1032, as amended by Act 147 of 1976, in pertinent part, provides:
"The rights and remedies herein granted to an employee ... on account of an injury ..., shall be exclusive of all other rights and remedies ... against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal ...

*479 "Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
"The immunity from civil liability provided by this Section shall not extend to: 1) any officer, director, stockholder, partner or employee of such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment; and 2) to the liability of any partner in a partnership which has been formed for the purpose of evading any of the provisions of this Section."
We are called upon to decide (1) whether La.R.S. 23:1032, as amended, prevents an injured employee from seeking recovery in tort for a work-related injury negligently caused by his co-employee; and, if so, (2) whether the legislature may constitutionally expand the exclusive remedy rule to bar negligence actions by employees against tortfeasors other than employers.

1.
The exclusive remedy rule prevents an employee from seeking recovery in tort for a work-related injury negligently caused by his co-employee.
By Act 147 of 1976 the legislature enlarged the category of employee injuries for which workers' compensation is the exclusive remedy. Formerly, the workers' compensation statute provided that compensation was an employee's exclusive remedy against his employer for a compensable injury, leaving him free to pursue other remedies against third persons. The amendment modified the exclusive remedy rule in two respects. First, it provided that for an unintentional injury compensation shall be the exclusive remedy, not only against the employer, but also against any principal, officer, director, stockholder, partner[1] or employee of the employer or principal who was engaged at the time of the injury in the normal course and scope of his employment. Second, it provided that for an intentional act resulting in compensable injury the employee may exercise his right under the compensation act and pursue any other remedy available against the employer and other persons under general law.
The principal legislative aim of the 1976 amendment was to broaden the class of defendants to be granted immunity from suits by injured employees in tort or delict. Although the legislative history is meager, accounts indicate that the amendment was enacted to provide employers relief from the cost of furnishing liability insurance to executive officers and other employees. Malone & Johnson, Workers' Compensation, § 364 in 14 Louisiana Civil Law Treatise 155 (2d ed. 1980); The Work of the Louisiana Legislature for the 1976 Regular Session, 37 La.L.Rev. at 182 (1976). Before the amendment, the absence of a prohibition against tort suits against co-employees allowed injured workers to seek tort recovery from negligent executive officers and their liability insurers. E. g., Canter v. Koehring Co., 283 So.2d 716 (La.1973); Berry v. Aetna Cas. & Surety Co., 240 So.2d 243 (La.App.2d Cir. 1970), cert. denied 256 La. 914, 240 So.2d 374, cert. denied 401 U.S. 1005, 91 S.Ct. 7255, 28 L.Ed.2d 541 (1971). This avenue of recovery provoked considerable critical comment. Comment, 33 La.L.Rev. 325 (1973); Note, 34 La.L.Rev. 141 (1973); Note, 46 Tul.L.Rev. 352 (1971); The Work of the Louisiana Appellate Courts, 1973-74 TermInsurance, 35 La.L.Rev. 415, 419 (1975). It was argued that, since the employer's enterprise would in the end pay for the tort remedy, either directly or through insurance premiums for officers and employees, the result would be a denial to the employer of much of the practical advantage of the exclusive remedy provision. W. Malone, Louisiana Workmen's Compensation Law and Practice, 1964 Supp. § 366 (1st ed. 1951). It was apparently for this reason that the legislature acted to close this avenue *480 of recovery by adopting Act 147 of 1976.
In abolishing the executive officer suit, however, the legislature provided that the exclusive nature of the compensation remedy does not apply to intentional acts. After considering broader penalties that would have provided double benefits for an employer's violation of a safety rule, failure to provide a safety device required by law, or gross negligence on the part of a supervisory employee, which caused injury, death or disease, Official Journal of the House of Representatives, June 4, 1976, H.B. 354, p. 20, our legislature chose to impose a sanction for intentional wrongs by making the exclusive remedy rule inapplicable to such acts. Because of the general practice of severely punishing intentional wrongdoers, which is widely accepted in the field of workers' compensation, because of the received meaning and acceptance of the statutory language, and considering the object of the legislation, we conclude that the words "intentional act" mean the same as "intentional tort" in reference to civil liability.
In drawing a line between intentional and unintentional acts we believe the legislative aim was to make use of the well established division between intentional torts and negligence in common law. See W. Prosser, Law of Torts, §§ 7, et seq. (4th ed. 1971). The lawmakers probably perceived this distinction as entirely consistent with the division in civil law between offenses, which require an intention to injure, and quasi offenses, damages caused without intention to harm. See 2 M. Planiol, §§ 815, 823, 825, 827, Civil Law Treatise (11th ed. La.St.L.Inst. trans. 1959). Universally, harmful conduct is considered more reprehensible if intentional. As Holmes said, "Even a dog distinguishes between being stumbled over and being kicked." Holmes, The Common Law, 3 (1881). There is a definite tendency to impose greater responsibility upon a defendant whose conduct has been intended to do harm, or morally wrong. W. Prosser, Law of Torts, § 7 (4th ed. 1971); Bauer, The Degree of Moral Fault as Affecting Defendant's Liability, 1933, 81 U.Pa.L.Rev. 586; Note, 1962, 14 Stan.L.Rev. 362.
Many states provide an employee an election to sue in tort, or a percentage increase in compensation, as the penalty for his intentional injury by the employer or for other forms of employer misconduct. 2A Larson, The Law of Workmen's Compensation, §§ 69 et seq. (1976). Even in jurisdictions with no statutory penalty for employer misconduct, intentional injury inflicted upon an employee by the employer, its alter ego, or in some instances its supervisory employee, may be made the subject of a common law action for damages on the theory that, in such an action, the employer will not be heard to say his intentional act was an "accidental" injury and so under the exclusive provisions of the compensation act. 2A Larson, §§ 68, et seq. See also, Miller v. Keating, 349 So.2d 265 (La.1977); Le Brane v. Lewis, 292 So.2d 216 (La.1974); Malone & Johnson, Workers' Compensation, § 365 (2d ed. 1980). Courts in most states imposing such statutory or common law penalties for intentional misconduct have required the commission of a genuine intentional tort and have refused to stretch liability to include negligence, recklessness, or constructive intent. 2A Larson, Workmen's Compensation, §§ 68.13, 69.20.
Plaintiff ingeniously has proposed, however, that the concept "intentional act" should be equated with "voluntary act." He interprets "intentional" to mean merely that before the actor acted he directed his mind on his own physical movement and not on the consequences of his act. Under his interpretation an injured employee may sue in tort on any voluntary act setting in motion events leading to his injury regardless of whether the harm appeared likely or was even apparent at all to the actor. For example, in the present case, plaintiff contends he alleged an intentional act triggering his escape from the compensation system when he averred that the defendant garbage truck driver intentionally did not blow his horn to warn plaintiff of an oncoming motorist, although plaintiff concedes *481 that the driver did not intend for harm to come to him. Plaintiff's interpretation is incongruous, not only because it departs from the almost universal practice of differentiating between intentional and unintentional harms, prevalent in most workers' compensation programs, but also because it ignores the accepted usage of the statutory terms in this state and generally, and his construction would thwart the legislative purpose.
Although the theorists have not always agreed, the words "act" and "intent" now have generally accepted meanings in the fields of tort and criminal law. The word act is used to denote an external manifestation of the actor's will which produces consequences. There cannot be an act subjecting a person to civil or criminal liability without volition. Therefore, a contraction of a person's muscles which is purely a reaction to some outside force, such as a knee jerk or the blinking of the eyelids in defense against an approaching missile, or the convulsive movements of an epileptic, are not acts of that person. Restatement (Second) of Torts, American Law Institute § 2 (1965); La.R.S. 14:8 comment. See also, Prosser, supra, § 8; LaFave and Scott, Criminal Law, § 25 (1972). The meaning of "intent" is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Thus, intent has reference to the consequences of an act rather than to the act itself. Restatement (Second) of Torts, supra, § 8; LaFave and Scott, Criminal Law, § 28 (1972); see also, Prosser, supra, § 8.
Our criminal and civil codes manifest legislative acceptance of these received meanings of "act" and "intent." As the criminal code articles and reporters' comments make clear, "act" refers to an external manifestation of will which must be voluntary, and "intent" is present when the offender either desires the consequences of his act or when he knew that the consequences were reasonably certain to result from his act. La. R.S. 14:8, 10 and Reporter's Comments. Although the civil code does not contain definitions of the terms, the word "act" is used many times and must be read in light of the code's underlying civilian concepts. See, e. g., Articles 2315-17. In Article 2315, for example, the word act is used to refer to both offenses and quasi offenses. As we noted above, the difference between these two acts of fault is that offenses require an intention to injure and quasi offenses are committed without intention to harm. 2 M. Planiol, §§ 815, 823, 825, 827. Thus, we see again a basic distinction between intentional and unintentional acts and use of intent in reference to the consequences of the act, rather than the act itself.
Our jurisprudence likewise reflects approval of the general notions of act and intent. This Court as early as 1936, approvingly recited the following: "It seems clear that, in the absence of language expressing a contrary meaning, an `act' involves an exercise of the will. It signifies something done voluntarily." Heiman v. Pan American Life Ins. Co., 183 La. 1045, 165 So. 195 (1936). Only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional. See Freeman v. Bell, 366 So.2d 197 (La.App. 2d Cir. 1978, writ denied, 369 So.2d 151 (1979)); Monk v. Veillon, 312 So.2d 377 (La.App. 3d Cir. 1975). See also Langlois v. Eschet, 378 So.2d 189, 190 (La.App. 4th Cir. 1979) (word "intended" synonymous with having in mind as an end or aim, implying mind is directed to some definite end). von Dameck v. St. Paul Fire & Marine Ins. Co., 361 So.2d 283 (La.App. 1st Cir.), writ denied 362 So.2d 794, 802 (1978) (if person has such a lack of reason, memory, and intelligence that prevents him from comprehending the nature and consequences of his acts, he cannot intentionally inflict injury).
Plaintiff's suggested interpretation of "intentional act," equates the term with "voluntary act" and robs it of any reference to the actor's state of mind concerning the *482 consequences of his act. It is most unlikely the legislature intended the words as plaintiff suggests, rather than in their most usual signification and in the sense in which the lawmakers have used them in other legislation.
Furthermore, plaintiff's interpretation would thwart the legislative objective of broadening the class of defendants to be granted tort immunity. Instead, Act 147 of 1976 would have the reverse effect of restricting the exclusive remedy rule to claims of employees injured without any other person's fault. Any employee could bring suit and recover under Article 2315 by pleading and proving that his injury was negligently caused by the voluntary conduct of his employer or co-employee. Since there cannot be an act subjecting a person to liability for negligence without volition, the exclusive remedy rule as interpreted by the plaintiff would abolish all tort immunity for employers and co-employees. In the absence of a clearer expression of legislative design to curtail drastically the workers' compensation system, we cannot attribute such aims to the lawmakers.
For these reasons, we construe the legislation under review as providing that the exclusive remedy rule shall be inapplicable to intentional torts or offenses. The meaning of intent in this context is that the defendant either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did. Several courts of appeal have stated the two prongs of the definition in the conjunctive, thus requiring a plaintiff to prove, in order to recover, that the defendant desired the physical results of his act in every case. Waldrop v. Vistron Corp., 391 So.2d 1274 (La.App.1980); McGuire v. Honeycutt, 387 So.2d 674 (La. App. 3d Cir. 1980); Johnson v. Chicago Mill & Lumber Co., 385 So.2d 878 (La. App. 2d Cir. 1980); Courtney v. BASF Wyandotte Corp., 385 So.2d 391 (La.App. 1st Cir.) writ denied 386 So.2d 359 (La.1980); Bourgoyne v. City of Baton Rouge, 380 So.2d 131 (La.App. 1st Cir. 1979), cert. denied 382 So.2d 164 (1980); Frazier v. Woodward, 378 So.2d 209 (La.App. 4th Cir. 1979); Johnson v. Narcisse, 373 So. 2d 207 (La.App. 4th Cir. 1979); Tobin v. Jacobson, 369 So.2d 1161 (La.App. 1st Cir. 1979); Guidry v. Aetna Casualty & Surety Company, 359 So.2d 637 (La.App. 1st Cir.) writ denied, 362 So.2d 578 (La.1978). Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. Restatement (Second) of Torts, § 8A, Comment; Prosser, supra, § 8.
Applying the statute to the facts set forth in plaintiff's petition, we conclude that the petition fails to state a cause of action in intentional tort or offense. The pleadings do not express or imply that the co-employee garbage truck driver desired the consequences of his acts or omissions or that he believed the consequences were substantially certain to result from them.

2.
The exclusive remedy rule does not violate plaintiff's rights to substantive due process and equal protection of the laws or other constitutional safeguards.
Bazley argues that the exclusive remedy rule violates several constitutional safeguards. First, he contends that the guarantees of substantive due process and equal protection are offended by arbitrary statutory classifications having no rational purpose which deprive some but not all employees injured by the negligence of another person of their tort remedies. Secondly, he contends for the same reason that he has been deprived of his state constitutional right to access to the courts. Finally, he urges us to declare Act 147 of 1976 unconstitutional because it was passed without a title indicative of its object.
The constitutions of the United States and this state impose no obligation on the legislature to provide injured employees with a particular kind of remedy for loss of income and medical expenses. But when a legislature acts to alleviate *483 some of the suffering and hardships of industrial accidents, the manner in which it provides for relief is subject to constitutional limitations. Bazley's claim is that the legislature must accord equal treatment to all employees with regard to work-related tort claims, and may not evidence a policy preference by allowing only those employees injured by strangers to the employer's enterprise to pursue their claims outside the compensation system. This challenge to the classifications established by the compensation statute presents a question arising under the Equal Protection Clause of the Fourteenth Amendment and the Louisiana constitution.
The basic framework of analysis of such a claim is well settled. We must decide, first, whether the legislation operates to the disadvantage of some suspect class or impinges on a fundamental right explicitly or implicitly protected by the constitution, thereby requiring strict judicial scrutiny. If not, the legislative scheme must still be examined to determine whether it rationally furthers some legitimate, articulated state purpose and therefore does not constitute an invidious discrimination. Maher v. Roe, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977); San Antonio School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); Burmaster v. Gravity Drainage Dist. No. 2, 366 So.2d 1381, 1387-88 (La.1978); Everett v. Goldman, 359 So.2d 1256 (La.1978); Succession of Robins, 349 So.2d 276 (La.1977).
This case involves no suspect class. An injured employee entitled to compensation but seeking more complete recovery by tort suit does not come within the limited category of disadvantaged classes so recognized by the Supreme Court. The statute does not classify persons on the basis of race, alienage, national origin, or discriminate against discrete and insular minorities. Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); United States v. Carolene Product Co., 304 U.S. 144, 152 n. 4, 58 S.Ct. 778, 783 n. 4, 82 L.Ed. 1234 (1938).
Nor does the statute limit the exercise of a fundamental constitutional right. The list of rights which have been found to be fundamental may be divided as follows: Freedom of expression and association, NAACP v. Alabama ex rel Patterson, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); Right to vote and participate in the electoral process, Harper v. Virginia Board of Election, 383 U.S. 663, 89 S.Ct. 1079, 16 L.Ed.2d 169 (1966); Right to interstate travel, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Right to fairness in the criminal process, e. g., Mayer v. Chicago, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Right to fairness in procedures concerning governmental deprivations of life, liberty or property, e. g., Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); Right to privacy, e. g., Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). See generally, Nowak, Rotunda & Young, Constitutional Law, 418 (1978). This list is not permanently exhaustive, but the right Bazley seeks to exercise is not within these fundamental categories.
As with the use of the equal protection clauses, in review of statutes for substantive due process, cases involving fundamental civil rights are to be distinguished from cases involving economic and social welfare legislation. In a case merely involving general police power or social welfare legislation such as our workers' compensation statute, the test of substantive due process is whether the regulation is reasonable in relation to the goal to be attained and is adopted in the interest of the community as a whole. West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); Everett v. Goldman, 359 So.2d 1256 (La.1978).
Applying these principles, we conclude that the amended exclusive remedy rule of our workers' compensation statute can be *484 sustained under the less demanding test of rationality that applies in the absence of a suspect classification or the impingement of a fundamental right. The legitimate articulated state purpose served by the workers' compensation statute "will disclose that its purpose is primarily to `abolish the common-law system relating to injuries to employees as inadequate to meet modern conditions and conceptions of moral obligations, and substitute therefor a system based on a high conception of man's obligation to his fellow man * * *.' By that system the loss incurred as a result of the employee's injury is recognized `as an element of the cost of production to be charged to the industry rather than to the individual employer, and liquidated in the steps ending with consumption, so that the burden is finally borne by the community in general. * * *'" Puchner v. Employers Liability Assur. Corp., 198 La. 922, 931, 5 So.2d 288 (1941); see also, 1 Larson, Workers' Compensation, § 1. The exclusive remedy rule extension is reasonable in relation to this goal and rationally furthers it. Although it is debatable and sharply contested, defendants reasonably contend that the 1976 amendment promotes the ends of the Act by relieving employers of the burden of liability insurance premiums for their officers and employees, thereby providing a more effective mechanism for providing cash-wage benefits and medical cost to victims of work-connected injuries, and for placing the cost of these injuries ultimately on the consumer. See, 1 Larson, Workers' Compensation, § 1, and that it will promote peace and harmony among employees by providing them with immunity from co-workers' tort claims. See 2A Larson, Workers' Compensation, § 72.20.
Bazley contends that the classifications of the exclusive remedy rule which grant tort immunity to executive officers, employees, and other persons related to the employer's enterprise are not rationally related to the legislative purpose. He argues that each employer in every instance will not be induced or compelled by collective bargaining or competition for management personnel to purchase liability insurance for the individuals granted immunity. However, in the area of economics and social welfare, a legislature does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some reasonable basis, it does not offend the constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality. Lindsley v. National Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369, 377 (1911). "The problems of government are practical ones and may justify, if they do not require, rough accommodationsillogical, it may be, and unscientific." Metropolis Theater Co. v. City of Chicago, 228 U.S. 61, 69-70, 33 S.Ct. 441, 57 L.Ed. 730, 734 (1913). "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).
We do not decide that the legislature's formulation of the exclusive remedy rule is wise, that it best fulfills the relevant social and economic objectives that Louisiana might ideally espouse, or that a more just and humane system could not be devised.[2] Conflicting claims of morality and intelligence are raised by opponents and proponents of almost every measure, certainly including the one before us. But the difficult economic and social problems presented by workers' compensation programs cannot properly be resolved by this Court. Cf. Dandridge v. Williams, supra, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491. Our federal and state constitutions may impose certain procedural safeguards upon systems of workmen's compensation, but they do not *485 empower this Court to second-guess legislators who are charged with the heavy responsibility of regulating the social obligations that exist between the employee, the employer, and the public. Accordingly, we conclude that Bazley's equal protection and due process claims are without merit.
The state constitutional guarantee of access to courts is Article 1, § 22 of the Louisiana Constitution, which reads:
"All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him and his person, property, reputation, or other rights."
This provision, like the Fourteenth Amendment to the United States Constitution, protects an individual's access to the judicial process. Where access to the judicial process is not essential to the exercise of a fundamental constitutional right, the legislature is free to allocate access to the judicial machinery on any system or classification which is not totally arbitrary. Everett v. Goldman, 359 So.2d 1256 (La.1978); see Ortwein v. Schwab, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973); United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973); Jones v. Union Guano Co., 264 U.S. 171, 44 S.Ct. 280, 68 L.Ed. 623 (1924). The legislation under review does not substantially alter a claimant's access to the judicial process, and, therefore, it does not contravene the access to courts guarantee of our state constitution. Bazley's complaints that he has been denied the right to sue in tort for full recovery for his injuries, and that he is discriminated against with respect to other plaintiffs who may bring such suits, actually raise the same substantive due process and equal protection issues which we have already resolved. See also Perez v. Continental Casualty Co., 367 So.2d 1284 (La.App. 3d Cir. 1979); Branch v. Aetna Casualty & Surety Co., 370 So.2d 1270 (La.App. 3d Cir. 1979).
Finally, Bazley contends that Act 147 of 1976 was enacted in contravention of Article 3, § 15(A) of the Louisiana Constitution of 1974 which, in pertinent part, provides:
"Every bill ... shall be confined to one object. Every bill shall contain a brief title indicative of its object."
The purpose of the one-object requirement is to restrict a legislative act so that a legislator will not have to consider the validity of two unrelated objects in deciding how to vote on a bill. State v. Cooper, 382 So.2d 963 (La.1980); State v. Dooley, 261 La. 295, 259 So.2d 329 (1972). If all the parts of a statute have a natural connection and reasonably relate, directly or indirectly, to one general and legitimate subject of legislation, the statute is not considered as being open to the objection of plurality, no matter how extensively it deals with the details looking to the accomplishment of the main legislative purpose. State v. Cooper, supra; Wall v. Close, 203 La. 345, 15 So.2d 19 (1943).
The purpose of the indicative title requirement is to give the legislature and the public fair notice of the scope of the legislation. The requirement is designed to defeat deceitful practices of misleading the legislature into the passage of provisions not indicated by the title of the bill. State v. Welkner, 259 La. 815, 253 So.2d 192 (1971).
Act 147 of 1976 is confined to one object because all of its parts have a natural connection and reasonably relate to one general and legitimate subject of legislation, the expansion of the exclusive remedy rule and the concomitant elimination of some third party actions.
The title of Act 147 of 1976 provides that it is an act "[t]o amend and reenact sections 1032 and 1101 of Title 23 of the Louisiana Revised Statutes of 1950 relative to workmen's compensation, to provide with respect to the exclusive nature of the compensation remedy in cases of injury or compensable sickness or disease and to provide with respect to third party actions and to otherwise provide with respect thereto." The title is indicative of the legislative object because it gives the public fair notice of the scope of the legislation.
*486 We find meritless Bazley's contention that Act 147 of 1976 is not germane to the object of the original compensation act, Act 20 of 1914, the title of which provides as follows:
"An act prescribing the liability of an employer to make compensation for injuries received by an employee in performing services arising out of and incidental to his employment in the course of his employer's trade, business or occupation in certain trades, business or occupations, abolishing in certain cases the defenses of assumption of risk, contributory negligence and negligence of a fellow servant in actions for personal injury and death, establishing a schedule of compensation, regulating procedure for the determination of liability and compensation thereunder and providing for methods for payments of compensation thereunder."
It is not fatal to the legislation that the title of the original act refers only to the employer's liability and not to the liability of third persons. It is not the purpose of the constitution to require that the title be an index to the contents of the act, or that every end and means convenient or necessary for the accomplishment of the general object of the act be set out at length in the title, but it is deemed sufficient, under the constitution, that the act contain but one object and that the object be fairly stated, although it be expressed in general terms, in the title of the act. All things proper or necessary to carry out the general object, so stated in the title, are deemed to be within the scope of the title. State v. Welkner, 259 La. 815, 253 So.2d 192 (1972); Southern Hide Co. v. Best, 145 So. 682, 176 La. 347 (1933).
For the reasons assigned, the judgment of the court of appeal is reversed, the judgment of the trial court is reinstated, and the case is remanded for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] However, the immunity from civil liability shall not extend to the liability of any partner in a partnership formed for the purpose of evading any of the provisions of the section. La.R.S. 23:1032, as amended.
[2] The trend in the nation, however, is toward expansion of immunity from common law suit. About one-third of the compensation statutes now grant immunity only to the employer, compared with a majority that did in 1976. Compare 2A Larson, 1980 Supplement § 72.10 with 2A Larson (main text 1976 § 72.10).