FORET, Judge.
Calvin Joseph Chaisson and Clint Randall Meche were injured while employees of *554 Glasscock Drilling Company. Plaintiffs filed separate lawsuits, now consolidated, asserting a cause of action for an alleged intentional tort. Defendants, Glasscock Drilling Co., their insurer, CNA Insurance Company, and Randy Henning, moved for summary judgment on the grounds that no genuine issue of fact existed as to whether the plaintiffs’ injuries were intentionally inflicted. The trial court granted summary judgment, without written reasons, in favor of Glasscock, CNA, and Randy Hen-ning.[1]
Plaintiffs, Chaisson and Meche, appeal from these two judgments. This appeal has been consolidated with Meche v. Henning, 525 So.2d 556 (La.App. 3 Cir.1988) which is also an action for an alleged intentional tort involving the same defendants, and in which a separate opinion is being rendered this date.
The issue before this Court is whether any genuine issue of material fact exists as to whether plaintiffs’ injuries were intentionally inflicted, thereby abrogating the immunity from tort liability ordinarily enjoyed by employers and co-employees for on-the-job accidents under La.R.S. 23:1032. We find that there is no genuine issue of fact material to the determination of whether the conduct of the defendants was intentional and affirm the trial court’s grant of both summary judgments.
PACTS
On the morning of September 12, 1979, Calvin Chaisson and Clint Meche, employees of Glasscock Drilling, were severely injured while working on the floor of a drilling rig. At the time of the injury, plaintiffs were pulling pipe out of the ground with a “traveling block” when the traveling block struck the seals of the “crown” above the drilling floor. A “traveling block” pulls, lifts, and pushes the drilling pipe in and out of the ground while the “crown” consists of wooden block seals located at the top of a drilling rig that protect the pulley system from being struck by the traveling block. Plaintiffs were injured when the traveling block struck the seals of the crown, breaking the wooden seals, causing wooden blocks to fall to the rig floor below.
More than three years after the accident, in September of 1979, Calvin Chaisson discovered that the “crown-o-matic” had not been set the morning of the accident. A “crown-o-matic” is a safety device installed on a drilling rig to prevent the traveling block from striking the crown.
Plaintiffs contend that the act of not setting the crown-o-matic was an intentional act and the cause-in-fact of plaintiffs’ injuries. Further, plaintiffs contend that the defendants intended to injure the plaintiffs or, in the alternative, that the defendants were substantially certain that injury would result from the failure to set the crown-o-matic.
MERITS
LSA-R.S. 23:1032, regarding an injured employee’s exclusive remedy under worker’s compensation law, states in pertinent part:
“The rights and remedies herein granted to an employee or his dependent on account of an injury, ... shall be exclusive of all other rights and remedies of such employee, ... against his employer, ... or employee of such employer or principal, for said injury ...
[[Image here]]
“Nothing in this Chapter shall affect the liability of the employer, ... or employee of such employer ... civil or criminal, resulting from an intentional act.”
Under the above statute, an injured employee may seek recovery in tort for a work-related injury intentionally caused by his co-employee.
The Louisiana Supreme Court in Bazley v. Tortorich, 397 So.2d 475, 481 (La.1981), defined an intentional act as follows:
*555 “The word act is used to denote an external manifestation of the actor’s will which produces consequences....
The meaning of ‘intent’ is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Thus, intent has reference to the consequences of an act rather than to the act itself.
[[Image here]]
... Only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional.”
More recently, in Caudle v. Betts, 512 So.2d 389 (La.1987), the Louisiana Supreme Court further clarified the meaning of an intentional act arising in the context of a battery occurring during “horseplay.” In Caudle, the Court found that an intentional battery had occurred when plaintiff’s employer’s principal owner and chief executive officer intentionally shocked the plaintiff with an auto condenser as a practical joke. The “horseplay” resulted in serious injury to the plaintiff’s occipital nerve.
The Caudle Court, in finding that the harmful or offensive contact was intentional, stated, at page 391:
“A harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact, is a battery.”
The Court continued, in defining “intent,” as follows:
“The intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Restatement (Second) of Torts, American Law Institute § 13, (comment e) (1965). Rather it is an intent to bring about a result which will invade the interests of another in a way that the law forbids. The defendant may be liable although intending nothing more than a good-na-tured practical joke, or honestly believing that the act would not injure the plaintiff, or even though seeking the plaintiff's own good.”
Id., at page 391.
The facts of Caudle are readily distinguishable from the facts in this case in that there is no evidence that the harmful contact which injured plaintiffs resulted from an act intended to cause plaintiffs to suffer such contact.
Additionally, all of the plaintiffs’ co-employees, Richard Comeaux, Lane Johnson and Randy Henning, testified that they had no intent to injure the plaintiffs. Plaintiffs have presented no evidence to the contrary and do not seriously contend that the defendants desired to injure them.
Therefore, our only concern is the second prong of the Bazley test, whether plaintiffs' injuries were substantially certain to occur when the defendants failed to set the crown-o-matic.
The Bazley court reasoned that, “[i]f the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.” Bazley, at page 482.
Plaintiffs contend that an intentional tort occurred when their co-employees failed to set the crown-o-matic, because their co-employees knew that an injury was substantially certain to occur if the traveling block hit the crown of the rig. The error in plaintiffs’ logic is that there is no substantial certainty that the traveling block would hit the crown merely because plaintiffs’ co-employees failed to set the crown-o-matic. Although plaintiffs’ contentions may be correct that injury is substantially certain to occur if the traveling block hits the crown, we cannot make the “quantum leap” and find that a failure to set the crown-o-matic would, with any certainty, cause the traveling block to hit the crown.
The evidence is replete with “ifs” rather than substantial certainties. For example, Richard Comeaux, a defendant and co-employee of plaintiff, testified that he had worked for Glasscock approximately six *556 teen years and had never crashed the traveling block into the crown of the rig. Co-meaux continued by testifying that, regardless of the crown-o-matic, a driller will never hit the crown as long as he counts his joints of pipe as he is pulling pipe out of the hole. In other words, it takes a human error, i.e., miscounting of pipe, in addition to the failure to set the crown-o-matic, to cause the traveling block to hit the crown. Without this human error, an oil rig could operate for an indefinite amount of time without an accident, regardless of whether or not the crown-o-matic was set as a safety device.
Plaintiffs rely heavily upon admissions by several defendants, Comeaux, Lane Johnson, and Randy Henning, that an injury was substantially certain to occur if the crown-o-matic is not connected and the traveling block hits the top of the crown and the wooden seals begin falling. This substantial certainty of injury occurs only if the traveling block hits the crown. There is no substantial certainty that the human error necessary, which allows the traveling block to hit the crown, will occur. The evidence presented by plaintiffs, in opposition to the motion for summary judgment, in fact supports the grant of summary judgment in that the depositions offered consistently set forth the fact that simply operating a drilling rig without a crown-o-matic does not mean that an accident is inevitable or substantially certain to occur.
Defendant and co-employee, Henning, testified that he had never seen a traveling block go through the top of a rig before this accident. In fact, Henning testified that prior to and after the accident of September 12, 1979, he had never had any other incidents where the traveling block went all the way to the top of the crown.
The evidence is uncontradicted that the cause of the accident was the human error of Randy Henning in miscounting the pipes as they were pulled up from the hole. There is absolutely no evidence that an accident was anticipated or intended. Simply speaking, if Henning had properly counted the pipe on the day of the accident, the injuries would not have occurred, despite the fact that the crown-o-matic was not set.
A motion for summary judgment is the proper procedural tool to penetrate a plaintiff’s general allegations that injuries resulted from an intentional tort. Mayer v. Valentine Sugars, Inc., 444 So.2d 618 (La.1984); Fallo v. Tuboscope Inspection, 444 So.2d 621 (La.1984); Summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact. LSA-C.C.P. Art. 966.”
Gallant v. Transcontinental Drilling Co., 471 So.2d 858, 862 (La.App. 2 Cir.1985).
The plaintiffs have not shown that a genuine issue of material fact exists as to whether or not plaintiffs’ injuries were intentionally inflicted. The evidence submitted in opposition to the motions for summary judgment does not support the contention that the traveling block was substantially certain to hit the crown because the crown-o-matic was not set.
In accordance with the reasons set forth above, the judgments of the trial court granting defendants’ motions for summary judgment are affirmed. The costs of this appeal are assessed to plaintiffs-appellants.
AFFIRMED.

. Additional defendants. Lane Johnson and Richard Comeaux, have not filed motions for summary judgment. The record reflects that the trial on the merits was set for January 27, 1987. The record does not reflect the outcome of the trial as to these remaining defendants.