600 So.2d 902 (1992)
Carrie Ola BROWN, as Curator of and in Behalf of Joyce Joann Brown, and as Tutrix of and in Behalf of Jonathan Brown
v.
DIVERSIFIED HOSPITALITY GROUP INC., d/b/a Steak and Eggs Kitchen, Reginald Williams, and the City of New Orleans.
No. 91-CA-1821.
Court of Appeal of Louisiana, Fourth Circuit.
May 28, 1992.
*903 Miles G. Trapolin, Ivor A. Trapolin, Trapolin Law Firm, New Orleans, for plaintiff/appellant.
Monica C. Sanders, Frederick A. Miller & Associates, Metairie, for defendant/appellee, Diversified Hospitality Group.
Brad G. Theard, Robert T. Myers, Young, Richaud, Theard & Myers, New Orleans, for defendant/appellee, American Nat. Fire Ins. Co.
Before SCHOTT, C.J., and BYRNES and ARMSTRONG, JJ.
*904 ARMSTRONG, Judge.
Plaintiff appeals the trial court's judgment granting defendants' motion for summary judgment.
On November 24, 1987 at about 3:00 a.m., Joyce Joann Brown ("Joyce") was shot during an armed robbery at her employer's restaurant on South Carrollton Avenue while performing her duties as a short order cook. Plaintiff, Carrie Ola Brown ("Brown"), mother and curator of Joyce and tutrix of Joyce's minor son, Jonathan Brown, instituted this intentional tort action against Joyce's employer, Diversified Hospitality Group, Inc. d/b/a Steak & Eggs Kitchen ("DHG"), and DHG's insurers, American National Insurance Company ("American National") and Hartford Accident and Indemnity Company ("Hartford") seeking damages for Joyce's injuries. Brown also filed suit against police officer Reginald Williams and the City of New Orleans through the New Orleans Police Department seeking damages for officer Williams' negligent actions during the robbery.
Brown's petition alleged that at the time of the robbery, Joyce was the only employee working the graveyard shift. Off-Duty police officer Reginald Williams, was in the restaurant having coffee when a masked armed robber entered. While the robber stood beside Joyce removing money from the cash register, Williams confronted the robber and started shooting. As a result of the ensuing shoot-out, Joyce was shot in the wrist, arm and head. The robber escaped uninjured.
Brown stated that Joyce remained in a coma for two months. As a result of her head injuries, Joyce is brain damaged and wheelchair bound for the rest of her life. She requires 24 hour care for the rest of her life.
Brown's petition further alleged that DHG was repeatedly robbed by armed persons before Joyce was employed, but the restaurant's management took no security precautions to prevent robberies or to protect its employees from harm. Brown contended DHG knew in 1987 that because of their late-night hours, 24-hour restaurants such as DHG's Carrollton outlet were robbed more often than other restaurants. Brown stated that, prior to Joyce's employment, two employees routinely worked the graveyard shift. Brown claimed that as the staff was reduced to a single employee when Joyce was hired, DHG increased the occurrence risk of a robbery and violated DHG's own corporate security policies. Brown concluded that DHG committed intentional torts of assault and/or battery on Joyce because it was substantially certain that its restaurant would be robbed by an armed person and, as a consequence, it was substantially certain that its employee would be shot and wounded or killed in the process of a robbery.
In response to Brown's petition, DHG answered denying that it had any intent to harm Joyce or knew or was substantially certain that Joyce would be shot or wounded during the course of an armed robbery at DHG's restaurant. DHG contended that Joyce was injured while working in the course and scope of her employment for DHG.
DHG and Hartford subsequently filed a joint motion for summary judgment arguing that they were entitled to summary judgment as a matter of law because Joyce's sole remedy against DHG, her employer, is under the Louisiana's Worker's Compensation Act. In support of their motion DHG presented the affidavit of Ronald P. McKoewn, Jr., Executive Vice-President of DHG and head of restaurant security. McKoewn stated in his affidavit that neither he nor any of DHG's owners, officers or employees had any conscious intention or desire to injure Joyce or to see her injured. He also stated that DHG instituted security measures in a conscious effort to minimize the possibility of an armed robbery at its restaurant outlets. McKoewn also stated that, both prior to and after Joyce's injury, DHG routinely employed only one employee to work the graveyard shift at the Carrollton Avenue outlet. He further stated that neither he nor any DHG employee was substantially certain or had any reason to believe the Carrollton Avenue outlet was in any way *905 particularly or uniquely susceptible to an armed robbery or that Joyce would be injured during the course of such a robbery. These arguments and evidence were subsequently adopted by American National when it moved for summary judgment.
In her opposition to the motion, Brown contended that if DHG's security had been better than what it was, the robbery could have been averted. Brown claimed that genuine issues of material fact exist for trial as to DHG's knowledge about the high crime level in the neighborhood and its simultaneous failure to prevent harm from befalling its employees by protecting them from the known danger of the violent crimes.
In support of her motion, Brown presented the affidavit of David Kent, a retired New Orleans Police Officer and a Certified Protection Professional. He attested to his familiarity with DHG's restaurant and to his knowledge that the restaurant is in a high crime area. He stated that the restaurant lacked the most common and least expensive security measures for the deterrence of crime. After a hearing on the motion, the trial court granted summary judgment in favor of DHG, Hartford and National.
Brown now appeals claiming that the trial court erred by granting these defendants' motion for summary judgment because DHG knew about the high crime level at the restaurant and in the neighborhood and failed to protect Joyce from the dangers of violent crime. Brown argues that Joyce is not limited to the exclusive remedy of worker's compensation for her job related injury because Joyce's injuries resulted from her employer's "intentional acts," tantamount to assault and/or battery.
Appellate courts review summary judgments de novo, under the same criteria that governs the district court's consideration of the appropriateness of summary judgment. Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342 (La.1991). The criteria set forth in the Code of Civil Procedure directs that a plaintiff or a defendant in the principal or any incidental action, with or without supporting affidavits, may move for summary judgment in his favor for all or part of the relief for which he has prayed. LSA-C.C.P. art. 966(A). The mover is entitled to judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with supporting affidavits, if any, show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). Osborne v. Vulcan Foundry, Inc., 577 So.2d 318 (La.App. 4th Cir.1991). Because the mover has the burden of establishing that no material factual issue exists, inferences to be drawn from the underlying facts contained in the record must be viewed in the light most favorable to the party opposing the motion. Schroeder v. Board of Sup'rs of Louisiana State University, supra.
LSA-R.S. 23:1032[1] makes worker's compensation an employee's exclusive remedy for a work-related injury caused by the company, an officer or a co-employee, except for a suit based on an "intentional act." White v. Monsanto Co., 585 So.2d 1205 (La.1991). The words "intentional act" mean the same as "intentional tort." Id. Thus, in the context of the intentional tort exception to the exclusive remedy rule of LSA-R.S. 23:1032, an "intentional act" is an act by a person (or entity) who: *906 either 1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or 2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result.
Bazley v. Tortorich, 397 So.2d 475, 481 (La.1981); Chaisson v. Henning, 525 So.2d 553 (La.App. 3d Cir.1988), writ den., 531 So.2d 277 (La.1988); Hood v. South Louisiana Medical Center, 517 So.2d 469 (La. App. 1st Cir.1987).
"Intent" refers to the consequences of the act, rather than to the act itself. White v. Monsanto Co., supra. Thus, under the Bazley test, only where the actor entertained a desire to bring about the consequences that followed or where the actor believed they were substantially certain to follow, has the act been characterized as intentional. Id.; Bazley v. Tortorich, supra. The latter, "substantially certain" factor is not an alternative to "intentional act," but a method of proving the act was intentional. Dycus v. Martin Marietta Corp., 568 So.2d 592 (La.App. 4th Cir. 1990), writ den., 571 So.2d 649 (La.1990). Its proof requires that the consequences of the actor's actions be "inevitable" or "incapable of failing." Williams v. Gervais F. Favrot Co., Inc., 573 So.2d 533 (La.App. 4th Cir.1991) [Bazley's "substantial certainty" language might be restated as "virtually sure" or "nearly inevitable."], writ den., 576 So.2d 49 (La.1991); Holliday v. B.E. & K. Const. Co., 563 So.2d 1333 (La.App. 3d Cir.1990).
When an employee seeks to recover from his employer for an intentional tort, a court must apply the legal precepts of general tort law related to the particular intentional tort alleged. White v. Monsanto Co., supra.; Caudle v. Betts, 512 So.2d 389 (La.1987); Dycus v. Martin Marietta Corp., supra. Brown's amending petitions allege assault and/or battery. Battery is a harmful or offensive contact with a person, resulting from an act intended to cause him to suffer such a contact. Caudle v. Betts, supra. The intention need not be malicious, nor to inflict actual damage. Id.; Fricke v. Owens-Corning Fiberglas Corp., 571 So.2d 130 (La.1990). The intention is sufficient if the actor intends to inflict either a harmful or offensive contact without the other person's consent. Id. An assault is a threat of such a harmful or offensive contact. A defendant's liability for the harm resulting from both of these intentional torts extends to consequences which the defendant did not intend and could not have reasonably foreseen. See Caudle v. Betts, supra.
As Brown did not allege that DHG, its employees and/or officers consciously desired to bring about Joyce's injuries, the first prong of the Bazley test is not applicable. Instead, it must only be resolved whether any genuine issue of material fact exists for trial as to the second prong, i.e., whether the consequences of Joyce's injury as a result of an armed robbery, was "substantially certain" to result from DHG's alleged failure to provide adequate security measures. Thus, Brown's summary judgment evidence must show a genuine issue of material fact for trial on DHG being substantially certain that the harmful contact which befell Joyce was "inevitable" or "incapable of failing."
Brown's summary judgment evidence showed that in the three years preceding Joyce's injury, DHG's Carrollton outlet was the site of seven armed robberies, eight thefts and one simple robbery, and chronicled the crime level of the neighborhoods surrounding the restaurant. Her evidence also contained the affidavit by David Kent.
Without addressing whether Brown's evidence on the elements of the torts of assault and/or battery is otherwise sufficient to prevent summary judgment, Brown's case fails because it does not establish intent/intentional act within the meaning of LSA-R.S. 23:1032. Brown's summary judgment evidence simply does not establish a genuine issue of material fact as to the substantial certainty that DHG knew or should have known its Carrollton outlet would be victimized by an armed robber and/or that Joyce would be injured during *907 the incident.[2]See Bourgeois v. Jordan, 527 So.2d 603 (La.App. 3d Cir.1988).
Mere knowledge and appreciation of a risk does not constitute intent. Williams v. Gervais F. Favrot Co., Inc., supra. Nor is a high probability of injury sufficient to establish intent under the intentional tort exception. Holliday v. B.E. & K. Const. Co., supra. Even if a defendant like DHG believes its security measures are causing an appreciable risk of harm to its employee, its actions constitute only negligence. See Williams v. Gervais F. Favrot Co., Inc., supra. If the risk is great enough, its conduct might be characterized as reckless or wanton, but it still does not rise to the level of an intentional tort. Id. Rather, the employer's conduct will not be considered intentionally tortious until the known danger ceases to be only foreseeable and becomes a substantial certainty. Id. Thus, the lack of DHG's security measures gives rise to conditions "which, at most, could be said to have made the occurrence of an accident likely, but the circumstances fall short of indicating that injury to plaintiff was inevitable or substantially certain to occur." Hood v. South Louisiana Medical Center, 517 So.2d at 471; Dycus v. Martin Marietta Corp., 568 So.2d at 594.
As none of Brown's summary judgment evidence supports her contention that the occurrence of the robbery and the consequences of Joyce being injured was a substantial certainty, the trial court correctly found no genuine issue of material fact exists for trial. Thus, DHG and its insurers were entitled to judgment as a matter of law.
For the foregoing reasons, the trial court's judgment is affirmed. All costs of the appeal are taxed to appellant.
AFFIRMED.
SCHOTT, C.J., concurs in result.
SCHOTT, C.J., concurring in the result:
The only question is whether there is any issue of material fact which would preclude summary judgment as a matter of law.
Plaintiff asserts that her evidence of widespread knowledge of the high incidence rate of armed robberies in this section of New Orleans would supply a factual issue as to whether DHG was substantially certain that its employee working alone on the graveyard shift would be injured in an armed robbery.
This assertion is flawed for two reasons: First, none of plaintiff's statistics show the percentage of armed robberies in which someone was injured. Consequently, even if the statistics established a substantial probability that the employee would be robbed there is no showing of any probability that she would be injured. Second, this employee was not injured because there was a robbery. She was injured because a third party, a customer, who happened to be an off duty policeman, initiated a shoot-out with the robber striking the employee who was in the line of fire directed at the robber. None of plaintiff's statistics even suggest that DHG was substantially certain this would occur.
Based upon Bourgeois v. Jordan, 527 So.2d 603 (La.App. 3rd Cir.1988), even if this employee had been shot by the robber without the intervention or even the presence of an intervening third party, plaintiff could still not recover. If the summary judgment in Bourgeois was properly granted the trial court was compelled to grant DHG's motion because the facts of the present case are far less supportive of liability than those in Bourgeois.
NOTES
[1] LSA-R.S. 23:1032 provides in pertinent part:

The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee.
* * * * * *
Nothing in this Chapter shall affect the liability of an employer, or any officer, director, stockholder, partner, or employee of such an employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
[2] Moreover, it seems inconsistent with the intentional tort exception to the employer's immunity to find an employer liable in tort to its injured employee for the intentional acts of third parties who have no employment connexity to the defendant employer and are not listed in LSA-R.S. 23:1032. Cf. Reeder v. Laks Corp., 555 So.2d 7 (La.App. 1st Cir.1989), writ den., 559 So.2d 142 (La.1990).