CANNELLA, Judge.
Appellant, Ernest Rose, appeals a judgment granting the peremptory exception of no cause of action in his action for intentional tort against his employer, appellee, Avondale Industries, Inc. We reverse and remand to the trial court for the trial judge to rule on the summary judgment.
Appellant alleges in his petitions that on March 22, 1990 he suffered severe and disabling injuries to his body when a cable sling broke, causing a 40 foot length of pipe to fall. In his initial petition he states *775 that the pipe struck other stored pipe and crushed his right leg.
Appellant filed suit on May 17, 1990 against the unknown manufacturer of the cable (XYZ Cable Company). Avondale intervened in the action to recover paid workers compensation benefits. Appellant amended his petition to substitute Lowery Brothers Rigging Center, Inc. (Lowery) and Bridón Elm, Inc. (Bridón) for XYZ Cable Co. Appellant also added Avondale and crew supervisor, Vernon Gonzales, as defendants. Avondale and Gonzales were sued because Gonzales allegedly told the crew to use a cable which was frayed, in extremely bad condition and likely to break. He contended that it was Avon-dale’s policy to use frayed cable until thirteen strands were broken. Appellant alleged that this constituted an intentional tort under the workers compensation act.
On April 24, 1991, Avondale filed a peremptory exception of no cause of action and a cross claim against Lowery and Bri-dón for contribution or indemnity. On April 30, 1991, Avondale filed another exception of no cause of action and a motion for summary judgment based on workers compensation as the exclusive remedy. It was supported by deposition excerpts. Appellant responded with an opposition brief, affidavits by himself and a co-worker, the foreman’s accident investigation report, copies of photographs of the frayed cable and a letter from counsel for Avondale granting permission to counsel for appellant to examine and perform tests on the cable. On September 23, 1991, appellant supplemented his opposition to the exception and motion for summary judgment filed by Avondale with the partial depositions of various co-employees, specification documents and safety regulations.
Vernon Gonzales was removed from the lawsuit on October 11, 1991 by appellant’s second supplemental and amending petition. On October 17, 1991, Avondale filed a memorandum in support of its motion for summary judgment. It attached parts of the depositions of John “Vic” Turner, C.J. Encalade, Byron Darensburg, Raymond Jones, J.D. Jackson, Wayne Kraemer and Michael Murphy.
The hearing on the exception and motion filed by Avondale was held on October 21, 1991.[1] Judgment was rendered on October 31, 1991 in favor of Avondale on the peremptory exception of no cause of action. The motion for summary judgment was not ruled on because the exception was granted. The trial judge, in his reasons for judgment, found the allegations of an intentional tort insufficient to support a cause of action within the workers compensation act.
On appeal, appellant contends that the trial judge erred in granting the exception of no cause of action. He claims that the facts asserted in his petition, as amended, raise the actions of Avondale to the level of intent, because appellant was required to work with a defective piece of equipment which was certain to break. Since the accident was substantially certain to follow, appellant contends that it meets the test of an intentional tort established in Bazley v. Tortorich, 397 So.2d 475 (La.1981).
The peremptory exception of no cause of action is triable solely on the face of the papers; for purposes of determining the. issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. La.C.C.P. art. 927, Darville v. Texaco, Inc., 447 So.2d 473 (La.1984).
In Carey v. UMC (United Mech. Contr.), 553 So.2d 472 (La.1989), plaintiff was injured when he was ordered to operate a jackhammer without a helper. The petition alleged that those facts constituted an intentional tort because defendants knew, or should have known, that injury to Carey was substantially certain to follow. Carey alleged that the employer’s conduct, in requiring him to operate the equipment without assistance, was wilful, wanton and intentional within the meaning of the workers compensation statute. The Louisiana *776 Supreme Court reversed this court, when we affirmed the judgment, dismissing plaintiff’s suit for intentional tort under the worker’s compensation act based on a peremptory exception of no cause of action. The Louisiana Supreme Court implicitly held in Carey that the exception of no cause of action is an improper vehicle to dismiss this type of action. It reached this conclusion because conditions of the mind, such as malice, knowledge, and intent, may be alleged generally. La.C.C.P. art. 856. The court stated that the determination of intent, for purposes of the intentional tort exclusion, must be resolved by motion for summary judgment or trial on the merits. See also: Faridnia v. Ecolab, Inc., 593 So.2d 936 (La.App. 4th Cir.1992).
In this case, the three petitions filed by appellant allege the following, in pertinent part;

Petition No. I

“II.
On or about March 22, 1990, petitioner Ernest Rose was caused to sustain severe, permanent and disabling injuries to his body as whole when a length of cable manufactured by XYZ Cable Company, Inc. parted causing a 40' length of 26" heavy wall pipe to strike other pipe stored on racks in the Avondale yard which were caused to strike and crush the right leg of Ernest Rose.
III.
“The accident and injuries of plaintiffs were a direct result of the negligence and strict liability of defendant XYZ Cable Company, Inc. in failing to construct a product that was safe and free of defects, failing to adequately test same and failing to provide adequate warning associated with its use.”

Petition No. II

“111(C).
Prior to the accident of Ernest Rose, Vernon Gonzales instructed Avondale personnel that steel cables such as the one which parted in this accident could not be replaced unless 13 strands of wire or more were broken. Said policy was deliberate, intentional and dangerous and it was substantially certain that said policy would result in an accident and injury precisely such as the one involving plaintiff Ernest Rose.
III(D).
The policy of Vernon Gonzales was on information and belief known to, or should have been known, and was approved by his superiors at Avondale. Furthermore, said policy was carried out during the course and scope of Vernon Gonzales’ employment duties and was part of his responsibilities at Avondale.
III(E).
The deliberate and dangerous policy of not replacing cable unless 13 strands were broken was an intentional act of defendants Vernon Gonzales and Avon-dale, the consequences of which were substantially certain and/or reasonably known by these defendants to follow from said policy and deliberately exposed Ernest Rose to a dangerous condition in which an accident and injury was substantially certain to occur, such as that alleged by plaintiff to have occurred.
III(F).
The cable involved in Ernest Rose’s accident had been installed at least five years prior to his accident, had a number of strands broken which contributed to the weakness and failure of said cable in this case and was neither inspected by defendant Avondale and/or Gonzales, nor replaced, because it had less that 13 stands broken. Its failure was a direct result of the intentional tortious conduct of defendants Gonzales and Avondale.
III(G).
On information and belief, Avondale deliberately and intentionally adopted a safety policy which was subjugated to a maintenance and repair policy directed at reducing costs and expense and, from *777 which it was substantially certain to follow, compromised safety;, including, inter alia, the particular act alleged above with regard to the replacement of cable, as well as such other deliberate and intentional acts as may be determined in discovery and established at trial on the merits, all of which effectively fostered and promoted a non-safety policy which caused or contributed to this accident.”

Petition No. Ill

“111(G).
Prior to the accident involving Ernest Rose, Mr. Rose and other members of his work crew including, but not limited to, Don Dempster and Byron Darnesburg were concerned that the condition of the sling which failed, causing Rose’s accident, was dangerous and needed to be replaced. These individuals asked Wayne Kraemer, their supervisor, an agent and employee of Avondale, to replace this sling.
111(H).
Wayne Kraemer requested that the sling involved in Rose’s accident be replaced prior to Rose’s accident, but, according to Kraemer, he was informed by Vernon Gonzales that the said sling could not be replaced unless 13 strands were broken. Despite the fact that Kraemer believed this sling to be “rotten”, he took no further action to replace it, and instead ordered his men to continue to work with it, despite further their continued requests that the sling be replaced.
III(I).
Although Kraemer could and should have gone over Gonzales’s head since he believed the sling was rotten, by reporting the matter either to Safety or to Kraemer’s own supervisor, Vic Turner, Kraemer, took no such action and ordered his men to continue to work with the rotten sling, despite the further fact that its condition worsened prior to Rose’s accident and despite further, the complaints and requests of the men that the sling be replaced because it was dangerous. Additionally, Kraemer knew on the day of Rose’s accident that the men would be using this “rotten” sling to move some of the heaviest pipe that had ever passed through the yard, but ordered his men to continue to use it.
III(J).
It is fundamental principle of safety that the longer a known dangerous condition is ignored, the more likely it is that a person will be injured. Kraemer knew with substantial certainty that if he continued to order his men to work with a sling he believed was “rotten”, someone was substantially certain to be injured.
III(K).
Avondale’s safety director has testified that if Kraemer believed the sling was rotten, he should have never ordered his men to use it. Avondale’s safety director has also testified that Kraemer told him after the accident that he believed the sling in question was rotten.
III(L).
At the time of Ernest Rose’s accident, Wayne Kraemer intended that his work crew, including Rose, work with a sling he believed to be rotten.
III(M).
Plaintiff’s injuries and damages are all a direct result of the intentional tortious conduct of Wayne Kraemer and other agents and employees of Avondale as complained of in the original and supplemental and amending petitions of plaintiffs. Avondale is liable for the intentional tortious conduct of Wayne Kraemer and Avondale’s other agents and employees.”
We find that these allegations cause this case to fall within the perimeters of Carey. Consequently, the merits of appellant’s claim must be determined after findings of fact upon either a motion for summary judgment or trial on the merits. The judg *778 ment of the trial court granting the peremptory exception of no cause of action is reversed and the case is remanded to the trial court for the trial judge to rule on the summary judgment. Costs of this appeal are to be paid by appellee.

REVERSED AND REMANDED TO RULE ON THE SUMMARY JUDGMENT.

. Both Lowery and Bridón filed motions for summary judgment. Those motions are not part of this appeal. They had not been ruled on at the time this record was lodged.