hYELVERTON, J.
Darrell Belgard appeals a judgment which dismissed his intentional tort suit against his employer, American Freight-ways, Inc. For the following reasons, we affirm.
FACTS
On August 28, 1997, workers were busy at the American Freightways trucking distribution center, or hub, in Pineville “breaking freight,” meaning taking' the freight from a trailer and placing it in a location for distribution to its destination. One particular trailer that was being unloaded contained two 55-gallon drums of ammonium hydroxide, a solution of anhydrous ammonia with water added to it. One of these drums was accidentally punctured when a worker using a forklift ran into it.
The workers on the dock were immediately evacuated to the offices in the front of the building because the trailer with the punctured drum was located at the back of the building. Kip Rodriquez, the hub supervisor at the time, then used the forklift to remove the pallet which held the punctured drum. The punctured drum was strapped to another drum. Rodriquez, with the aid of Johnny Sullivan, the center manager, and possibly one other worker, physically removed the drum from the trailer and from the pallet and positioned it on the dock with the puncture spot up to stop it from leaking further.
Sullivan then went back to the front of the building to make some calls to find out about the material in the drum. He called the shipper and Chemtrek, an organization that gives information on chemicals. After discussing the situation with-these companies, Sullivan decided that the dock needed to be aired out because Rammonia evaporates when it is exposed to air. Sullivan then radioed Rodriquez who was at the contact station located in the center of the building.
The Plaintiff, Belgard, was a hostler. Belgard’s job as hostler was to use his tractor to move loaded trailers to the dock for unloading and remove trailers from the dock after they were loaded and ready to go to their destinations. His tractor was out in the yard. Belgard was called to move the trailer from the dock so it could begin to air out. He was exposed to the ammonia when he got close to the scene of the spill. As a result of his exposure to the ammonia when he moved the trailer, Belgard claims that he sustained severe lung injuries.
This is not the first time that this case has been before this court. American Freightways initially filed a motion for summary judgment claiming that Belgard’s exclusive remedy was workers’ compensation benefits. The trial court granted the motion. Recognizing jurisprudence which holds that summary judgment is hardly ever appropriate when there are questions regarding subjective facts such as intent, this court reversed and remanded the matter for trial. This court found that the trial court had made a subjective determination of material facts regarding Rodriquez’s knowledge and intent when he ordered Belgard to move the trailer. Belgard v. American Freightways, Inc., 99-1067 (La.App. 3 Cir. 12/29/99), 755 So.2d 982, writ denied, 00-293 (La.3/31/00), 756 So.2d 1147.
After the remand, the case was tried on August 16, 2001. While the trial court found that American Freightways had made some mistakes in the handling of the situation, the court held that Belgard failed to establish by a preponderance of the evidence that the actions rose to the level of an intentional tort. The trial court dismissed the suit. The issue on appeal is *612 whether the trial court was manifestly |3erroneous in finding that the evidence did not establish that American Freightways was guilty of an intentional tort.
INTENTIONAL TORT
In Bazley v. Tortorich, 397 So.2d 475 (La.1981), the supreme court determined that the exclusive remedy rule of workers’ compensation was inapplicable to intentional torts or offenses. In discussing what actions would constitute an intentional tort the supreme court stated:
The meaning of intent in this context is that the defendant either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did.... Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.
Id. at 482.
Later in Reeves v. Structural Preservation Systems, 98-1795 (La.3/12/99), 731 So.2d 208, the supreme court again discussed the intentional act exception to the Workers’ Compensation Act. The court reviewed the legislative history of the Act and the intent of the legislature in drafting this exception. Interestingly, as noted by the supreme court, the legislature rejected two amendments which would have broadened the coverage of the intentional act exclusion.
The first amendment would have provided an award of double the normal compensation against an employer when the death, injury or disease “is caused by the employer’s violation of a recognized safety rule or regulation, his failure to provide a safety device required by a recognized safety rule or regulation or by a statute, or by gross negligence on the part of a supervisory employee ...” Official Journal of the House of Representatives, June 4, 1976, H.B. 354, p. 20. The second amendment would have provided that the exclusive coverage of the Act did not apply “if such injury or compensable sickness or disease is caused by the gross negligence, as hereinafter defined, of said party |4or parties. Gross negligence exists when there is such disregard of the interest of others that the tortfeasor’s conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonable careful man under like circumstances. Ordinary negligence sufficient to sustain a cause of action under Article 2315 of the Louisiana Civil Code is not sufficient to constitute gross negligence as defined in this section.” Official Journal of the House of Representatives, June 4, 1976, H.B. 354, p. 21. The Senate likewise debated and rejected two similar amendments. Official Journal of the Senate, July 12, 1976, p. 42. The Senate also removed the words “or deliberate” from the bill without objection. Official Journal of the Senate, July 12, 1976, p. 41. As commentators have stated, “[t]he only reasonable conclusion to be drawn from the legislative process is that both houses of the legislature rejected attempts to make the exception any broader than ‘intentional’ acts of the employer, thereby giving the exception a narrow scope, limited tó conduct which is truly intentional.” Malone & Johnson, Louisiana Civil Law Treatise, Volume 1L Workers’ Compensation Law & Practice, § 365, p. 206 (3rd ed.1994). “Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, or *613 willfully failing to furnish a safe place to work, this still falls short of the kind of actual intention to injure that robs the injury of accidental character.” Larson, 2A Workmen’s Compensation Law, § 68.13 (1989).
Id. at 210 (alteration in original).
The supreme court then further explained the “substantial certainty” requirement as requiring:
more than a reasonable probability that an injury will occur and ‘certain’ has been defined to mean ‘inevitable’ or ‘incapable of failing.’ “[A]n employer’s mere knowledge that a machine is dangerous and that its use creates a high probability that someone will eventually be injured is not sufficient to meet the ‘substantial certainty’ requirement.” “Further, mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing.”
Id. at 213 (citations omitted)(alteration in original).
We are mindful that the trial court’s determination of whether the employer committed an intentional tort is factual in nature and should not be disturbed absent manifest error. Faul v. Trahan, 98-488 (La.App. 3 Cir. 10/7/98), 718 So.2d 1081.
| .¡Belgard argues that the trial court erred in finding that American Freight-ways did not commit an intentional tort when the evidence showed that he was ordered to move a cargo trailer that was known to be full of hazardous fumes and liquid with no protection. Belgard argues that everyone knew that exposure to the fumes would cause some injury.
Everyone that was present when the spill occurred testified that the ammonia fumes burned their eyes and they had to hold their breaths; even Rodriquez and Sullivan testified that was so. Rodriquez and Sullivan themselves were in the middle of the spill, with Rodriquez entering the trailer with the forklift to remove the pallet with the punctured drum, and both of them using their hands to get the punctured spot turned upright to stop the spillage after they put it on the dock. They were literally on top of the escaping fumes. Belgard was never in the vicinity of the spill until he had to hook his rig to the trailer to move it, and by this time at least 30 minutes had elapsed, and much of the spillage had evaporated. Rodriquez did not ask Belgard to move the trailer until Sullivan told him that it needed to be done.
Belgard claims that when he went to hook up the trailer, ammonia which had earlier spilled into the trailer was pouring out of it, because the trailer was tilted toward the front. He testified that the fumes were so bad that he ran to get breaths of fresh air several times and only hooked up one line, instead of two, before moving the trailer.
It does not appear from the testimony that either Rodriquez or Sullivan knew that the ammonia was still leaking onto the ground from the trailer itself. Only a third of the drum had spilled and much of that was on the dock and not in the trailer. It appears that the presence of liquid ammonia in the trailer itself, after at least 30 | ^minutes had passed, would be known only to someone, like Belgard, who actually walked outside the dock by the trailer, because the trailer was backed up to the open dock door. The doors on the trailer were open and remained open while Bel-gard backed it up so that the trailer could air out, because ammonia will evaporate as it is exposed to air.
Belgard has suggested that he was seared not to move the trailer as ordered because of a small run-in he had with *614 Rodriquez in the past which resulted in his suspension for three days. There is no indication in the record, either from Bel-gard or other witnesses, that Belgard was threatened with any type of discipline if he refused to move the trailer.
The State Police were called to investigate this incident a couple of months after the accident. The law requires that the hazard materials section of the State Police be contacted when there is a release of hazardous materials. La.R.S. 30:2873. Neither Rodriquez nor Sullivan realized that they were supposed to contact the State Police. However, Sergeant William Bobbitt who investigated the incident stated that both men were very cooperative with the investigation. Their testimony in the record supports that neither Rodriquez nor Sullivan tried to conceal anything about the conditions and events surrounding the punctured drum.
Although the investigators testified that no one should have been allowed near the trailer while the ammonia was still present without the proper protective clothing and breathing equipment, they did not find that the supervisors had done anything to intentionally harm Belgard. American Freightways was charged with careless handling of a hazardous material. The jurisprudence has held, almost without exception, that the violation of a statute alone is not per se an intentional act under |7the intentional act exception to the exclusivity rule. Cole v. State of Louisiana, Department of Public Safety and Corrections, 01-2123 (La.9/4/02), 825 So.2d 1134.
While this may be a case of gross negligence, we do not find any evidence that the supervisors sent Belgard to move the trailer with the knowledge that he would likely suffer injury as a result of any exposure he may have had. The supervisors did not ask Belgard to do anything that they themselves had not done. They themselves were physically handling the punctured drum while the liquid was pouring out of it. The Plaintiff has failed to prove the elements of the intentional tort exception.
For these reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed to Darrell Belgard.
AFFIRMED.