STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-1254

JEREMY CAMPIONE

VERSUS

ANDREW ALDERMAN, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2004-6297
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Sylvia R. Cooks, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

Glen R. Galbraith
Amy Lawler Gonzales
Seale & Ross, P.L.C.
P. O. Drawer 699
Hammond, LA 70404
Counsel for Defendant/Appellee:
        Red Rocket Fireworks Co., Inc.

Joshua M. Palmintier
Attorney at Law
618 Main St.
Baton Rouge, LA 70801
Counsel for Plaintiff/Appellant:
        Jeremy Campione

Andrew Alderman
In Proper Person
103 Windrus Lane
Lafayette, LA 70506
Defendant/Appellee

**PICKETT, Judge.**

The plaintiff, Jeremy Campione, appeals a judgment of the trial court granting a motion for summary judgment filed by the defendants, Andrew Alderman and Red Rocket Fireworks, Inc., which sought dismissal of the plaintiff's "intentional tort" suit. After a de novo review, we affirm the judgment of the trial court.

**FACTS**

On December 29, 2003, both the plaintiff, Jeremy Campione, and the defendant, Andrew Alderman, were employed by the defendant, Red Rocket Fireworks, Inc. (Red Rocket), which owned and operated a fireworks stand (in a tent) located on Cameron Street in Scott, Louisiana. The defendant, Andrew Alderman, was already at work when the plaintiff arrived sometime that afternoon to begin his shift. The record reveals some dispute as to what happened as the plaintiff entered the tent. The defendant testified, in deposition, that as the plaintiff entered the tent he began engaging in horse-play or rough-housing with another employee, Jason Walker—punching, or at least, feinting punching Jason. In his deposition, the plaintiff first stated that he only "high-fived" Jason, but then admitted that he was clowning around with Jason and may have acted as though he was going to punch him. However, he denied actually throwing a punch.

As to the accident itself, the defendant stated that after the plaintiff "greeted" Jason, the plaintiff advanced towards him, his hands raised in the same manner as he had done with Jason. The defendant, who had been opening boxes and who had a box cutter in his had, turned to face the plaintiff and threw up his hands to ward off a perceived blow. The plaintiff brought his right hand and arm down toward the defendant and the plaintiff's right wrist came in contact with the box cutter in the

2

defendant's hand, cutting the plaintiff's wrist. In their depositions, *both the plaintiff and the defendant agreed that the defendant had no intention* to cut the plaintiff.

## LAW AND ARGUMENT

The plaintiff asks this court to expand the definition of "substantially certain to follow" to include the defendant's act in this case. *See Bazley v. Tortorich*, 397 So.2d 475 (La.1981). In *Bazley*, the plaintiff argued "that the concept 'intentional act' should be equated with 'voluntary act.' He [asked the court to] interpret[] 'intentional' to mean merely that before the actor acted he directed his mind on his own physical movement and not on the consequences of his act." *Bazley* at 480. In rejecting the plaintiff's argument in *Bazley*, the court explained:

> In drawing a line between intentional and unintentional acts we believe the legislative aim was to make use of the well established division between intentional torts and negligence in common law. The lawmakers probably perceived this distinction as entirely consistent with the division in civil law between offenses, which require an intention to injure, and quasi offenses, damages caused without intention to harm. Universally, harmful conduct is considered more reprehensible if intentional. As Holmes said, "Even a dog distinguishes between being stumbled over and being kicked." There is a definite tendency to impose greater responsibility upon a defendant whose conduct has been intended to do harm, or morally wrong.
> . . . .
> Although the theorists have not always agreed, the words "act" and "intent" now have generally accepted meanings in the fields of tort and criminal law. The word act is used to denote an external manifestation of the actor's will which produces consequences. There cannot be an act subjecting a person to civil or criminal liability without volition. Therefore, a contraction of a person's muscles which is purely a reaction to some outside force, such as a knee jerk or the blinking of the eyelids in defense against an approaching missile, or the convulsive movements of an epileptic, are not acts of that person. The meaning of "intent" is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Thus, intent has reference to the consequences of an act rather than to the act itself.
> . . . .

3

Our jurisprudence likewise reflects approval of the general notions of act and intent. This Court as early as 1936, approvingly recited the following: "It seems clear that, in the absence of language expressing a contrary meaning, an 'act' involves an exercise of the will. It signifies something done voluntarily." Only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional. . . .

. . . .

Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.

*Bazley*, 397 So.2d at 480-82 (citations omitted).

Thus, in a situation where a coworker's actions produce injury, in order to recover in tort, a plaintiff must prove his injury resulted from coworker's intentional tortious act, i.e. "the actor entertained a desire to bring about the consequences that followed" or he knew that the consequences were certain, or substantially certain, to result from his act, and still proceeded. Such was not the case here. What happened here was simply an unfortunate accident. Both the plaintiff and the defendant stated in their respective depositions that the defendant's action was not deliberate. There is simply no evidence that the defendant had any intent, aim, plan, desire, objective or goal to injure the plaintiff. Likewise, there is no evidence that the defendant proceeded knowing the consequences were certain, or substantially certain, to result from his act. The plaintiff approached the defendant and the defendant, believing that the plaintiff was, at least, going to feint a punch in his direction, put up his own hands in a blocking maneuver. It was the plaintiff's own momentum which brought him into contact with the box cutter in the defendant's hand, not a swing or swipe by the defendant.

In this case, the "pleadings, depositions, answers to interrogatories, and

4

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). Thus, summary judgment was appropriate.

Accordingly, for the reasons stated, the judgment of the trial court is affirmed. All costs of this appeal are assessed against the plaintiff/appellant, Jeremy Campione.

**AFFIRMED.**