STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

22-316

DANIELLE HEBERT, INDIVIDUALLY
AND ON BEHALF OF HER SON, JARREN MILLER

VERSUS

LOUISIANA MEDICAL MUTUAL INSURANCE COMPANY
(LAMMICO), JENNINGS AMERICAN LEGION HOSPITAL, AND
TIMOTHY MAGANN, M.D.

**********

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-57821
HONORABLE C. STEVE GUNNELL, DISTRICT JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of Shannon J. Gremillion, John E. Conery, and Candyce G. Perret, Judges.

AFFIRMED.

**Damon L. Beard**
**Todd A. Townsley**
**Sage Thibodeaux**
**Hannah E. Mayeaux**
**The Townsley Law Firm**
**3102 Enterprise Boulevard**
**Lake Charles, Louisiana  70601**
**(337) 478-1400**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Danielle Hebert**
    **Danielle Hebert, on behalf of her minor son, Jarren Miller**


**René J. Pfefferle**
**Watson, Blanche, Wilson, & Posner**
**505 North Boulevard**
**Baton Rouge, Louisiana  70821-2995**
**(225) 387-5511**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Jennings American Legion Hospital**
    **LAMMICO**


**Julie Savoy**
**Michael A. Dalman**
**Gachassin Law Firm**
**Post Office Box 80369**
**Lafayette, Louisiana  70598**
**(337) 235-4576**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Dr. Timothy Magann**

**CONERY, Judge.**

In this medical malpractice action, we consider the issue of whether a medical malpractice claim which arose from treatment for a child's strep infection occurring during the pandemic must first be presented to a medical review panel in light of the Louisiana Health Emergency Powers Act, La.R.S. 29:760, *et seq.* The Act, in part, imposes a heightened burden of proving gross negligence or willful misconduct. For the following reasons, we maintain the trial court's determination that the instant claim arises under the Medical Malpractice Act requiring pre-trial submission to a medical review panel.

## FACTS AND PROCEDURAL HISTORY

Danielle Hebert sought treatment at an urgent care facility for her son Jarren Miller on October 5, 2020. Five-year old Jarren was exhibiting high fever and initially responded to treatment with Amoxicillin, Tylenol, and Motrin as prescribed by the acute care clinic. Jarren's symptoms worsened, and Ms. Hebert sought emergency treatment for Jarren at the E.R. of the American Legion Hospital in Jennings on October 10, 2020. She reported that Jarren's fever had returned the previous day, along with lethargy, body aches, and chills. Jarren had also developed diarrhea on October 10, prompting Ms. Hebert to pursue further treatment at the E.R. American Legion Hospital E.R. nursing staff observed at that time that the child had an increased pulse, decreased blood pressure, and a widening pulse pressure.

On assessment, Admitting Physician Timothy Magann ordered various tests, including one for Covid-19, but allegedly failed to order testing to rule out sepsis.[1] Dr. Magann determined that Jarren was suffering from fever, viral syndrome, and

---

[1] Dr. Magann's notes indicate that Ms. Hebert provided her son's history. She reported that the October 5, 2020 evaluation at urgent care revealed: "Neg Flu, Strep, Mono[.]"

dehydration. He treated the child with intravenous fluids, a corticosteroid, and Tylenol. Dr. Magann noted that Jarren's condition had improved in response to treatment and that the child was feeling better. Dr. Magann discharged Jarren with instructions for quarantine until the Covid-19 test results were received and recommended a follow up visit with a pediatrician after forty-eight hours. Dr. Magann provided no additional prescription medications and recommended that Tylenol and Motrin be administered as needed. He also urged a return visit to the hospital "tomorrow" if Jarren's condition was not considerably improved.

On the following morning, Ms. Hebert called 911 after she found Jarren bleeding from the mouth. Although he was initially transported to a Crowley hospital, Jarren was transferred to Our Lady of Lourdes Hospital in Lafayette where he was diagnosed with severe sepsis with septic shock. After Jarren's legs became cyanotic and swollen, Jarren was taken to Ochsner in New Orleans where he ultimately underwent bilateral above-the-knee amputations.

Ms. Hebert, individually and on behalf of Jarren (Plaintiffs), filed this medical malpractice claim on October 8, 2021, naming Jennings American Legion Hospital (the Hospital), its insurer LAMMICO, and Dr. Magann as Defendants. Plaintiffs styled their claims as ones for intentional tort and for gross and willful misconduct. Plaintiffs simultaneously filed a request for the formation of a medical review panel with the Commissioner of Administration.

In December 2021, the Hospital and LAMMICO filed an Exception of Prematurity, noting that the matter had not yet gone before a medical review panel. Dr. Magann filed a separate exception of prematurity. Defendants argued that a medical review panel was required as Plaintiffs' petition alleged medical malpractice within the definition of La.R.S. 40:1231.1(A)(13) and under the six-factor test

2

interpreting the Medical Malpractice Act as set forth in *Coleman v. Deno*, 01-1517 (La. 1/25/02), 813 So.2d 303.  In support of their exceptions, Defendants provided documentation regarding their respective qualified status.  The Hospital also submitted Jarren's medical records from his October 10, 2020 treatment.

Opposing the exception, Plaintiffs argued that their claims are not premature as they raised claims for intentional tort, gross negligence and/or willful misconduct.  Plaintiffs argued that La.R.S. 40:1231.1(A)(13) limits malpractice to "unintentional tort[s.]"  Plaintiffs contended, therefore, that the Medical Malpractice Act and its requirement for pre-trial submission to a medical review panel is inapplicable to their petition.

Plaintiffs further argued that their claim, which arose during the Covid-19 public health emergency, is governed by the Louisiana Health Emergency Powers Act as provided by La.R.S. 29:760, *et seq*. rather than the Medical Malpractice Act.  They maintain that the primacy of La.R.S. 29:771(B)(2)(c)(i) pretermits the need to submit claims to a medical review panel as the pertinent portion of the statute provides that:  "During a state of public health emergency, no health care provider shall be civilly liable for causing the death of, or injury to, any person or damage to any property except in the event of gross negligence or willful misconduct."

In response, Defendants recognized the temporal applicability of the Louisiana Health Emergency Powers Act but argued that the public health emergency provision does not relieve Plaintiffs from following the Medical Malpractice Act.  Defendants instead argued that the two statutory provisions must be harmonized, and that La.R.S. 29:771(B)(2)(c)(i) provides only a heightened burden of proof for recovery on a medical malpractice action.

3

Defendants further disputed Plaintiffs' contention that claims for gross negligence and/or willful misconduct are not the type of "unintentional tort" subject to the Medical Malpractice Act pursuant to the definition of "malpractice" provided by La.R.S. 40:1231.1(A)(13). To the extent Plaintiffs styled their claims as intentional tort, Defendants maintained that Plaintiffs merely invoked the term, describing only that Defendants made intentional treatment "choices." Plaintiffs did not allege that Defendants intended, desired, or knew that the result (amputation of both legs above the knee) was substantially certain to follow.

The trial court heard the matter in March 2022. Ruling from the bench, the trial court granted the exceptions, stating:

> I don't believe the emergency statute that was enacted takes this case out of the Medical Malpractice Act. I don't think it does. Also, there's the allegations in the petition - - you may say it's intentional, but if you look at the allegations, it's either negligence, and I think the Medical - - Medical Malpractice Act will cover the gross negligence issues that were raised.

The trial court signed the judgment granting the exceptions of prematurity and dismissing Plaintiffs' claim on March 28, 2022.

Plaintiffs filed a timely appeal.

## ASSIGNMENTS OF ERROR

Plaintiffs assign the following as error on appeal:

> 1. Title 40 does not govern intentional or gross acts, therefore, the trial court improperly sustained Defendants' Exceptions raising the objection of prematurity requiring Plaintiffs' gross negligence or willful misconduct claims to be reviewed by a medical review panel.

> 2. Under a Public Health Emergency, Title 29 governs Plaintiffs' claims and Title 40, the Louisiana Medical Malpractice Act, cannot form a basis for Defendants' liability. Because Title 29 provides the statutory framework for Plaintiffs' claims and governs this action, Plaintiffs' Petition for Damages was not premature.

## LAW AND DISCUSSION

*Exception of Prematurity*

Louisiana Code of Civil Procedure Article 926(A)(1) provides for the exception of prematurity. This dilatory exception questions whether the cause of action has matured to the point where it is ripe for judicial determination. *Kelleher v. University Med. Ctr. Mgmt Corp.*, 21-00011 (La. 12/10/21), 332 So.3d 654. The exception of prematurity subjects a medical malpractice claim against a qualified health care provider to dismissal if "such claim has not first been reviewed by a pre-suit medical review panel" as required by La.R.S. 40:1231.8. *Id.* at 657. In a medical malpractice matter such as the present case, the exceptor must demonstrate that he or she "is entitled to a medical review panel because the allegations fall within the scope of the [Medical Malpractice] Act." *Id.* The question of whether a medical malpractice claim is within that scope is a question of law subject to the *de novo* standard of review. *Id.*

With that standard in mind, we consider whether Plaintiffs' claims must first be submitted to a medical review panel.

*The Medical Malpractice Act – Gross Negligence and Willful Misconduct*

As they did below, Plaintiffs contend that their claims are not dictated by the Medical Malpractice Act. Their argument is twofold. First, Plaintiffs maintain that their petition alleges gross negligence, willful misconduct, and intentional tort by Defendants, that such claims fall outside of the Medical Malpractice Act, and that they do not, therefore, require submission to a medical review panel. Secondly, as they did below, Plaintiffs point to the Louisiana Health Emergency Powers Act, La.R.S. 29:760, *et seq.*, noting that the subject treatment occurred during the Covid-

5

19 global pandemic and that the Act supplants the Medical Malpractice Act in this instance.

Typically, La.R.S. 9:2794(A) provides the burden of proof for medical malpractice "based on the negligence" of a physician. As the parties acknowledge however, the underlying medical treatment at issue in this case occurred in October 2020, well after the Governor's March 11, 2020 declaration of a public health emergency due to the pandemic. This court has recently explained that La.R.S. 29:771(B)(2)(c)(i) provides a "*heightened burden of proof*" against private health care providers during the event of a public health emergency. *Whitehead v. Christus Health Cent. La.*, 21-764, p. 5 (La.App. 3 Cir. 6/8/22), 344 So.3d 91, 94 (emphasis added). In this regard, La.R.S. 29:771(B)(2)(c)(i) provides:

> During a state of public health emergency, no health care provider shall be civilly liable for causing the death of, or injury to, any person or damage to any property except in the event of *gross negligence* or willful misconduct.

(Emphasis added.) The *Whitehead* panel identified the "obvious purpose" of this modified burden of proof as the need "to allow health care providers to provide medical care and treatment during a time of public health crisis without concerns of liability for a patient's poor outcome, unless the treatment decisions were grossly negligent, or the provider's misconduct was unlawful." *Id.* at 95. As the more specific statute, the panel explained that La.R.S. 29:771 prevails over the more general malpractice statutes during a state of public health emergency and provides the heightened burden of proof. *Id.*

Plaintiffs maintained that to the extent they have asserted gross negligence and willful misconduct claims, La.R.S. 29:771, alone, is applicable. Plaintiffs point out that the statute itself makes no reference to the Medical Malpractice Act and the

6

necessity of prior submission to a medical review panel is unnecessary if the claims are ones of gross negligence and/or willful misconduct. In this sense, Plaintiffs suggest that claims of gross negligence and/or willful negligence stand apart and distinct from the "unintentional tort" encompassed within the definition of malpractice provide by the Medical Malpractice Act in La.R.S. 40:1231.1(A)(13).

Plaintiffs' position was plainly rejected in *Whitehead*, however. The panel noted that provisions regarding malpractice liability for state health care providers do, in fact, exclude claims of gross negligence in certain circumstances or intentional act. *Whitehead*, 344 So.3d 91 (citing La.R.S. 40:1237.1-1240). *Whitehead*, however, did not involve state providers. Instead, like here, the defendants were private health care providers for which "[n]o such similar provision exists in the provisions of the act relating to malpractice liability for private health care services." *Id.* at 95.

Using principles of statutory construction, the *Whitehead* panel noted the policies necessitated by the public health emergency and concluded that La.R.S. 29:771(B)(2)(c)(i)'s heightened burden of proof "'during a declared state of medical emergency prevails over the more general malpractice statutes.'" *Id.* at 95 (quoting *Lejeune v. Steck*, 13-1017, p. 6 (La.App. 5 Cir. 5/21/14), 138 So.3d 1280, 1284, *writ denied, sub nom., Daigle v. Steck*, 14-1408 (La. 10/3/14), 149 So.3d 800).

However, even during the time of a declared public health emergency, the medical malpractice provisions for private health care providers continue to be found in La.R.S. 40:1231.1-1231.10. *Whitehead*, 344 So.3d 91. In fact, La.R.S.

7

40:1231.1(A)(13) defines malpractice by a private health care provider, in part, as follows:

> "Malpractice" means *any unintentional tort* … based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, … and also includes all legal responsibility of a health care provider arising from acts or omissions. . . . in the training or supervision of health care providers . . . .

(Emphasis added.)

As here, the *Whitehead* plaintiffs argued that their claims of gross negligence and willful misconduct stand apart from the "unintentional tort" described in the above definition. The *Whitehead* panel explained, however, that given the definition provided by La.R.S. 40:1231.1(A)(13), courts of this state have determined that claims for gross negligence of private health care providers are covered under the Medical Malpractice Act. *Whitehead*, 344 So.3d 91 (citing *Wesco v. Columbia Lakeland Med. Ctr.*, 03-0328 (La.App. 4 Cir. 9/10/03), 862 So.2d 997, *writ denied*, 04-0525 (La. 4/30/04), 872 So.2d 490; *Flood v. Pendleton Mem'l Methodist Hosp.*, 02-0440 (La.App. 4 Cir. 7/17/02), 823 So.2d 1002, *writ denied*, 02-2206 (La. 11/8/02), 828 So.2d 1121). *See also McDowell v. Garden Court Healthcare, L.L.C.*, 54,645 (La.App. 2 Cir. 8/10/22), 345 So.3d 506. Thus, "any claims alleged by the Whiteheads, other than intentional acts, must still first be presented to a medical review panel." *Whitehead*, 344 So.3d at 96.

Furthermore, since *Whitehead*'s release—and after the parties' submission of briefs in this case—the second circuit rendered *McDowell v. Garden Court Healthcare, L.L.C.*, 345 So.3d 506, a case in which the plaintiff similarly maintained that her claims for gross negligence and willful misconduct were controlled strictly by La.R.S. 29:771(B)(2)(c)(i), not the Medical Malpractice Act found in La.R.S.

40:1231.1, *et seq.* The *McDowell* panel determined, however, that because the plaintiff's claims fell within the purview of the Medical Malpractice Act, that Act required pre-trial submission to a medical review panel. *Id.*

As in this case, the subject medical treatment in *McDowell* occurred within the pandemic and, thus, the heightened burden of La.R.S. 29:771(B)(2)(c)(i) was applicable. *Id.* The second circuit remarked that:

> The statutory law leaves no doubt "malpractice" under the MMA does not include intentional acts; malpractice is specifically defined as "*any unintentional tort.*" In turn, "tort" is defined as "*any breach of duty or any negligence act.*" Although the MMA does not specifically encompass "gross negligence," it does not exclude the term from its scope.

*Id.* at 511 (emphasis added).

Both *Whitehead* and *McDowell* undermine Plaintiffs' argument regarding their claims of gross negligence and willful misconduct. We maintain that reasoning here, finding that Plaintiffs' claims of gross negligence and/or wrongful misconduct fall within the type of treatment-related "unintentional tort" described by La.R.S. 40:1231.1(A)(13). Those claims must therefore proceed to a pre-trial medical review panel.

*The Medical Malpractice Act – Intentional Tort*

*Whitehead* was released only days before Plaintiffs' submission of their appellant's brief to this court. Plaintiffs, in turn, have offered only cursory argument regarding its applicability. In a single paragraph, Plaintiffs suggest that *Whitehead* is inapplicable.[2] Plaintiffs contend that unlike the *Whitehead* plaintiffs, they *have* alleged claims of intentional acts in their petition and that Plaintiffs specifically

---

[2] The same law firm representing Plaintiffs in this case represented the plaintiffs in *Whitehead*.

9

alleged that "Defendants made 'willful, deliberate, and intentional choices' which 'made it predictable or substantially certain harm would occur to Jarren Miller.'" Plaintiffs argue that "[s]uch claims of intentional acts, therefore, must proceed outside the LMMA."

Plaintiffs do not address, however, the remainder of *Whitehead*'s statement regarding the nature of an intentional tort. Considering whether the petition before it contained an allegation of an intentional tort, the *Whitehead* panel explained that such a tort requires that the provider either: "'(1) consciously desires the physical result of his act[;] or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result.'" *Whitehead*, 344 So.3d at 96 (quoting *Bazley v. Tortorich*, 397 So.2d 475 (La.1981). The *Whitehead* petition, however, included "no allegations against any of the Defendants *that they actively desired or knew the results of their actions would result in harm*" to the plaintiffs' child. *Id.* (emphasis added). The panel thus concluded that the plaintiffs failed to allege an intentional tort and that the allegations sounded in negligence, requiring submission to a medical review panel.

The application of the supreme court's definition of intentional tort in the medical malpractice context in *Whitehead* follows this court's earlier decision in *Cudges v. Our Lady of Lourdes Hospital*, 514 So.2d 195 (La.App. 3 Cir. 1987). In *Cudges*, the panel explained that the plaintiff's petition "allege[d] neither of the two tests set forth by the Supreme Court in *Bazley*. And from *the facts alleged (not legal conclusions alleged)*, it does not appear that the conduct complained of constitutes an intentional tort . . . [.]"[3] *Id.* at 197 (emphasis added).

---

[3] Ms. Cudges alleged that: "[B]y the neglect and intentional acts of hospital personnel plaintiff received by intravenous administration a believed to be near fatal overdose of the drug

Rather, the panel in *Cudges* explained, "[i]t appears from the pleadings that the acts complained of were ordinary hospital procedures which may or may not have been done negligently, but were certainly not done with the intent to precipitate the alleged consequences of the acts." *Id.* (footnote omitted). The panel thereafter applied Ms. Cudges' *factual* allegations to the *Bazley* standard for an intentional tort, explaining that:

> [F]rom the facts alleged in plaintiff's petition, we are unable to conclude that (1) defendant's employees consciously desired the physical result of their acts, or (2) knew that the result was substantially certain to follow from their conduct. It appears from the pleadings that the acts complained of were ordinary hospital procedures which may or may not have been done negligently, *but were certainly not done with the intent to precipitate the alleged consequences of the act.*

*Id.* (emphasis added) (footnote omitted). Thus, the panel explained, the defendant's exception of prematurity should have been sustained as to all of the plaintiff's demands. *Id.*

Plaintiffs do not address *Cudges*, but, in disputing the applicability of *Whitehead*, point to their assertion that Defendants made "willful, deliberate, and intentional choices" which "made it predictable or substantially certain harm would occur to Jarren Miller."

Review of Plaintiffs' petition, however, reveals that Plaintiffs have not alleged specific facts pertaining to intentional acts as required by *Bazley*. Rather, the

---

Heprin causing a dramatic loss of blood pressure and near death condition . . . ." *Id.* at 196. Ms. Cudges also alleged that:

> "During the same hospital stay thru [sic] the direct negligence and/or intentional acts of Our Lady of Lourdes Hospital personnel, while attempting to draw blood, the unknown lab personnel continued to attempt to draw blood over the pleas of complainant that 'something was wrong,' resulting in a venopuncture . . . Therefore, defendant's negligence and intentional act have caused complainant great pain . . ."

*Id.* at 197.

conduct complained of was treatment related and characterized as having been related to Defendants' "intentional *choices*." Like the petitions under review in *Whitehead* and *Cudges*, Plaintiffs' petition does not allege specific facts to demonstrate that the defendant health care providers consciously desired the physical result of their acts or knew that the result was substantially certain to follow from their conduct. That deficiency of fact pleading, in turn, likewise distances Plaintiffs' claims from the definition of intentional tort provided by the supreme court in *Bazley*, 397 So.2d 475.

Reference to *McDowell*, 345 So.3d 506, is particularly instructive. As did Plaintiffs in this case, Ms. McDowell asserted that her claims of gross negligence could not be reviewed by a medical review panel as the acts were intentional. The second circuit panel, however, reviewed Ms. McDowell's allegations under the factors of *Coleman v. Deno*, 813 So.2d 303, emphasizing the final factor, which addresses whether the tort alleged was intentional. *Id.* The second circuit explained that Ms. McDowell's allegations, "pertain to medical treatment and sound in medical malpractice." *Id.* at 512. The panel stated that "[t]he mere fact plaintiff has labeled the alleged acts as 'gross negligence' and 'willful misconduct' is not determinative of whether the alleged conduct falls under the MMA." *Id.* The *McDowell* panel found that the trial court had properly sustained the exception of prematurity and explained that the issue before it—as here—was limited to one of prematurity. *Id.* Any assertion that the complained of conduct actually breached the heightened standard of La.R.S. 29:771(B)(2)(c)(i) remained for presentation to post medical review panel proceedings.

12

Plaintiffs' factual allegations in this case similarly relate to treatment errors or omissions by Defendants, obviously stemming from medical treatment and related care as defined in La.R.S. 40:1231.1(A)(13), which again provides:

> "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services *rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely* and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, *in the training or supervision of health care providers*, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.

(Emphasis added.)  Plaintiffs' petition as it pertains to the Hospital cites failures of evaluation, treatment, documentation, communication, supervision/training of staff, and the like.  As for Dr. Magann, Plaintiffs alleged the same failures—largely word for word—absent the allegations pertaining to training and supervision.

Moreover, following the analysis reflected in *McDowell*, Plaintiffs' claims satisfy the *Coleman* factors as they: 1) are treatment related or caused by a dereliction of skill; 2) will require expert medical evidence as to standard of care; 3) pertain to assessment of the patient's condition; 4) occurred within the context of a physician-patient relationship or within the hospital's scope of activities; 5) will require consideration of whether the injury would have occurred absent treatment; and 6) are not alleged to have been intentional.  *See Coleman*, 813 So.2d 303.

Pertaining to the sixth factor, whether or not the acts are alleged to have been intentional, Plaintiffs argue that they alleged that each of Defendants' actions/inactions constituted intentional and/or constituted gross negligence or willful misconduct as Defendants made willful, deliberate and intentional *choices* not to communicate and ignored the consequences of a sepsis diagnosis.  Plaintiffs

13

further asserted that: "These willful, deliberate, and intentional choices made it predictable or substantially certain harm would occur to Jarren Miller. At a minimum, these actions constituted an extreme departure from ordinary care and made it predictable and substantially certain that harm to Jarren Miller [would follow]."

As in *Whitehead*, however, Plaintiffs' petition likewise contains "no allegations against any of the Defendants *that they actively desired or knew the results of their actions would result in harm*[.]" *Whitehead*, 344 So.3d at 96 (emphasis added.) Absent that allegation, Plaintiffs' factual claims instead sound in medical malpractice despite the Plaintiffs' attempt to couch Defendants' actions as "intentional," with no specific facts pleaded to demonstrate such intent.

This lack of factual pleading was found fatal to the plaintiff's claim in *Butler-Bowie v. Olive Branch Senior Care Ctr.*, 52,520, p. 10 (La.App. 2 Cir. 2/27/19), 266 So.3d 478, 484. In that case, the second circuit explained that "something more than a conclusory allegation of intentional conduct is required to state a cause of action." Rather, "[w]here special statutes limit the tort cause of action to claims based on intentional conduct, the plaintiff *is required to allege at least some facts; the mere invocation of the word "intentional" will not create a cause of action*." *Id.* at 485 (emphasis added). The *Butler-Bowie* panel explained that the plaintiff in that case had instead alleged negligence and substandard conduct, which fall under the Medical Malpractice Act. Plaintiffs in this case similarly characterize "choices" as intentional, but include no allegations regarding Defendants' intent, desire, or knowledge as to outcome as required for the definition of intentional tort as set forth in *Bazley*, 397 So.2d 475.

14

Accordingly, we conclude that each of Plaintiffs' claims are encompassed within the type of unintentional tort described in the Medical Malpractice Act and thus require pre-trial submission to a medical review panel.

*Strict Construction of the Medical Malpractice Act*

In the remainder of their brief, Plaintiffs return to a position rejected in *Whitehead*. Namely, they contend that the Medical Malpractice Act's exclusive remedy for unintentional tort must be strictly construed against health care providers and should not be read to include actions for gross negligence or willful misconduct which they, again, equate to an intentional tort. Plaintiffs maintain instead that reference should be made to the Workers' Compensation statutory scheme which provides the exclusive remedy available to an injured employee but not for those who have suffered an intentional tort.

The *Whitehead* panel found no merit in this conflation of gross negligence/willful misconduct with an intentional tort and further recognized that "even the Workers' Compensation Act is still the exclusive remedy for gross negligence claims." *Whitehead*, 344 So.3d at 96. To the extent that Plaintiffs reference intentional conduct in their petition, we have recognized above that the Plaintiffs do not allege that Defendants consciously desired the harmful outcome or that Defendants knew that the result was substantially certain to follow. As seen in *Whitehead*, *McDowell*, and *Butler-Bowie*, such a failure supports the trial court's determination that the exception of prematurity must be sustained. We maintain that reasoning here.

**DECREE**

For the foregoing reasons, we affirm the trial court's judgment of March 28, 2022 sustaining the Exception of Prematurity filed by Defendants/Appellees,

15

Jennings American Legion Hospital and Louisiana Medical Mutual Insurance Company, and the Exception of Prematurity filed by Defendant/Appellee Dr. Timothy Magann. Costs of this proceeding are assessed to Plaintiffs/Appellants Danielle Hebert, individually and on behalf of her minor son, Jarren Miller.

**AFFIRMED.**